93 N.J. Super. 302 (1967)
225 A.2d 715
LESLIE BOWERS, PLAINTIFF-RESPONDENT,
v.
CAMDEN FIRE INSURANCE ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1966.
Decided January 12, 1967.
*304 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Roy Cummins argued the cause for appellant (Messrs. Orlando & Cummins, attorneys; Mr. George H. Hohweiler, on the brief).
Mr. Milton L. Silver argued the cause for respondent.
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a judgment for plaintiff for the excess over the policy limits on a judgment recovered against plaintiff as the result of an automobile accident. Plaintiff claimed wrongful refusal by defendant insurance carrier to settle the case within the policy limits.
Plaintiff Bowers purchased from defendant an automobile liability insurance policy with $20,000/$40,000 limits. While the policy was in effect plaintiff was involved in an automobile-pedestrian accident. The pedestrian Albert Seagrave, 21 months of age, through his guardian brought a negligence action against Bowers; his father and guardian sued individually for consequential damages. In that case the jury returned a verdict of $20,000 for the infant and $9,000 for the father. The present defendant investigated the case and handled its defense through retained counsel.
Thereafter, Bowers sought a new trial upon the grounds that (1) the trial court erred in failing to grant his motion for involuntary dismissal at the trial, and (2) the verdict was *305 contrary to the weight of the evidence. The motion was denied. Bowers then appealed to this court, arguing solely that there was not sufficient evidence of negligence to take the case to the jury. In an unreported per curiam opinion the judgment was affirmed. Counsel retained by defendant insurance carrier handled these proceedings in the name of Bowers.
After denial of the motion for new trial but before the appeal was taken defendant, on the advice of counsel, refused an offer by the Seagraves' attorney to accept $20,000 in full settlement, although Bowers requested defendant to accept the offer.
Following the affirmance on appeal defendant herein paid $20,000 plus interest to Seagraves. Thereupon, Bowers instituted the present action to recover the excess of $9,000 plus interest and costs.
In his complaint plaintiff alleges:
"The failure of the defendant to pay the sum demanded of it in settlement of the claim of the said Albert Seagrave and Joseph Seagrave, Sr. was careless, negligent and in bad faith to the plaintiff in the circumstances above set forth; the defendant acted, not in the interest of the plaintiff, but in its own interest in refusing to make settlement after motion for a new trial was overruled; because of the defendant's bad faith, carelessness and refusal to make said settlement at said time, the plaintiff has been made subject to liability for $9,000.00 with interest thereon from February 5, 1964."
The matter was tried before a jury. At the conclusion of plaintiff's case defendant moved for judgment upon the grounds that (1) there was no evidence that it was negligent in the investigation of the case or in the prosecution of the defense, and (2) bad faith was not established by the refusal to accept the claimants' settlement offer. The trial court granted the first portion of the motion and withdrew the negligence theory from the consideration of the jury. On this appeal plaintiff does not argue that the court erred in its disposition of the negligence charge. We therefore dismiss from further consideration that aspect of plaintiff's original claim for relief.
*306 At the close of the entire case defendant, on motion for involuntary dismissal, again argued, inter alia, that the proofs were barren of any inference that defendant was guilty of bad faith in failing to settle the case in the circumstances hereinafter set forth. The trial court again denied that branch of defendant's motion and submitted the issue to the jury. The jury, as noted, found for plaintiff.
The determinative question presented to us is whether, in total view, there was any evidence from which a jury could reasonably infer that defendant insurer had breached its obligation to exercise good faith in behalf of its insured.
The essential background facts are not in dispute. On May 21, 1961 Bowers was driving the insured vehicle at about 10-15 M.P.H. on Clinton Street, Clayton, New Jersey. He said that he was looking straight ahead when he felt a thump in the middle of the right side of his car. He stopped immediately and found the Seagrave child lying behind the right rear wheel of the car. It was a clear day and the accident happened in daylight. There were no eyewitnesses to the actual occurrence and the child, of course, could not give any account of the event. There was no testimony which controverted Bowers', and the child's attorney admitted that his client's case was wholly circumstantial. The theory he advanced was that since the child was found under the rear part of the car it could be inferred that he was struck by the front of the car and run over, and that upon this hypothesis a jury could reasonably infer that Bowers had failed to exercise reasonable care to observe the presence of the child on or about the highway as he approached the accident scene. The defense, based to some extent upon the fact that there was no mark at the front of Bowers' vehicle, projected the theory that the child ran into the side of the car. The remainder of the proofs related to the physical evidence of roadway conditions. These were as reconcilable with defendant's theory as with plaintiff's.
Bowers timely reported the accident to the carrier, which then conducted an investigation and engaged a competent law *307 firm as independent trial counsel to defend the Seagraves' suit. John P. Hauch, Jr., Esq., experienced in the defense of negligence actions, was assigned the case by the law firm. Mr. Hauch wrote Bowers a letter advising him that the injuries were serious and could result in a judgment exceeding the policy limits, at the same time inviting him to retain his personal attorney to aid in the defense. Bowers did not do so. Throughout the pretrial discovery which ensued, at and after the Seagraves' trial, and at the present trial, Bowers has maintained that he was not at fault for the occurrence of the accident.
Mr. Hauch testified that during the Seagraves' trial he offered either $12,000 or $14,000 in settlement to the Seagraves' attorney, Thomas Connery, Esq. Mr. Connery neither accepted the offer nor made any counter-offer of his own, either before or during the trial. He testified that he had no specific recollection of that offer.
It appears that the jury in the Seagrave case was dead-locked 6-6 after several hours of deliberation. However, further deliberation resulted in a 10-2 verdict in the amounts above stated.
At the argument for a new trial Seagraves' attorney offered to accept $9,000 less than the verdict of $29,000 if no appeal was taken. After denial of the new trial the offer was repeated in writing. Upon learning of this proposal Bowers, who until then had favored an appeal, demanded that it be abandoned.
After Bowers' motion for new trial had been denied defendant's casualty superintendents, Messrs. Miller and Millich, both of whom had law degrees, arranged for a meeting with Thomas Howarth, secretary in charge of the claims department, who was authorized to make final decisions in cases such as this. Discussions were entered into mainly with a view to determining whether or not the state of the law was such as to indicate that an appeal, if taken, would probably be successful. Mr. Hauch joined in the conferences and offered the opinion that the existing decisional law did not justify the *308 verdict against Bowers, and that there was a reasonable basis for appeal with a probability of success, and a good chance of successfully defending the claim if a second trial was held. At the trial of the present case he testified also that his opinion regarding an appeal would have been the same if only Bowers were affected, or if only the carrier was affected. Howarth decided that the appeal should be taken.
Mr. Connery, testifying as an expert for plaintiff in the present case, stated that, "based on experience, an appellate court rarely reverses on the weight of the evidence or sufficiency of evidence."
The basic problems involved herein were extensively discussed in Radio Taxi Service, Inc. v. Lincoln Mutual Ins. Co., 31 N.J. 299 (1959). In that case it was said:
"* * * we hold that the obligation assumed by the insurer with respect to settlement is to exercise good faith in dealing with offers of compromise, having both its own and the insured's interests in mind. And it may be said also that a reasonably diligent effort must be made to ascertain the facts upon which a good faith judgment as to settlement can be formulated.

* * * * * * * *
A decision not to settle must be an honest one. It must result from a weighing of probabilities in a fair manner. To be a good faith decision, it must be an honest and intelligent one in the light of the company's expertise in the field. Where reasonable and probable cause appears for rejecting a settlement offer and for defending the damage action, the good faith of the insurer will be vindicated.

* * * * * * * *
[F]rom a practical standpoint if a mere mistake of honest judgment (based upon a post-verdict appraisal) were said to create a jury question, the obvious danger cannot be ignored that a jury in the policy suit in order to impose liability upon the carrier for the excess, would require little more proof than the fact of rejection of an offer to settle within the policy limit, and a verdict at the trial in excess thereof." (at pp. 304, 305)
The court there concluded that there was nothing in the facts to warrant an inference sufficient to raise a jury question that the insurer did not exercise good faith in rejecting plaintiff's pretrial offer to settle for a sum which was within the policy *309 limits, and thus that it could not be held for the excess of the limits resulting from the jury verdict.
Plaintiff argues that the case is distinguishable because here defendant refused to settle within the policy limits after a jury had returned a verdict exceeding them, and notwithstanding the verdict of the jury and the trial judge's refusal to grant a new trial, took an appeal. We do not think the distinction is valid.
Defendant had a right to take an appeal subject to its obligation to proceed in good faith, as that obligation is defined in Radio Taxi Service, Inc., supra. Certainly the full discharge of its duty involved a thorough consideration of the factors of the jury's verdict, the denial of the motion for new trial, the chances of reversal on the grounds to be advanced, and the possible results of a new trial if appeal should be successful and a new trial awarded rather than a dismissal of the complaint. But it appears without contradiction that all of these factors were carefully considered by defendant's agents before the decision to appeal was made. At most it may be said that by hindsight its judgment turned out to be an honestly mistaken one.
As we read Radio Taxi Service, Inc., supra, good faith must be determined as of the time the judgment is made and the company's course is charted. We think that this must be so whether defendant, acting in good faith, declines to settle before or during the trial, or whether after trial it decides to appeal from an adverse verdict. As in Radio Taxi Service, Inc., supra, we are unable to find any indication of lack of good faith sufficient to submit that issue to the jury.
Plaintiff places great reliance upon the dictum in Hazelrigg v. American Fidelity & Casualty Co., 241 F.2d 871, 873 (10 Cir. 1957), that "an even clearer duty" than ordinarily rests on the insurance company to consider settlement within the policy limits after a verdict in excess of the policy limit has been returned. The reason given in the opinion is that in such circumstances an appeal if successful can benefit only the company, not the insured (i.e., as against the alternative *310 of accepting the settlement). We do not think the situation after verdict is different in principle, although obviously the rendition of the verdict against its insured is, as recognized above, a factor to which the company must give due consideration in comparing the alternatives of acceptance of the settlement offer and prosecuting an appeal. The fact that an appeal, vis-a-vis a settlement, in these circumstances is of advantage only to the company, not the insured, is no more determinative of the good or bad faith of the company than the equally obvious consideration that acceptance of the settlement offer in lieu of appealing would benefit only the insured and not the company.
Under the Radio Taxi Service, Inc. rationale the company is bound to consider the interests of both its insured and itself. It is not required to sacrifice its own interests in order to guarantee the insured an acquittance where he has incurred a potential liability in excess of his coverage. No jury could here reasonably say that defendant's chances of reversing the Seagraves' judgment on appeal were so insubstantial that its decision on advice of competent counsel to take an appeal (which if successful might have constituted or led to the acquittance of both the insured and itself from further liability) was per se taken in bad faith.
In reaching these conclusions we are not unmindful that the proofs plaintiff submitted included a letter written by Mr. Connery to Mr. Hauch, dated November 8, 1962, which included a statement:
"If the insurance company you represent is not willing to pay its full liability in this case at this time, and unreasonably gambles on the result of an appeal to the Appellate Division, Supreme Court. [sic], I firmly believe that an affirmance of the judgment the company could be held liable for the excess through its failure to act reasonably and in good faith on behalf of its assured."
The letter was admitted in evidence over defendant's objection. We think this was incompetent as hearsay and constituted prejudicial error. We accord the letter no weight since the contents had no bearing whatever upon the issue of defendant's *311 good faith. Specifically, we hold that defendant was not bound to take into consideration the self-serving advice or admonition of the attorney for the adverse party unsupported by citation of judicial precedents, particularly where defendant's own attorney advised it that the taking of an appeal offered a reasonable prospect of success, and the experience of its claim personnel was not to the contrary.
We therefore conclude that the trial court erred in failing to grant defendant's motion for a judgment of involuntary dismissal.
Reversed and remanded with the direction that judgment be entered for the defendant.